WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lane Sennett,<br><br>   Plaintiff,<br><br>vs.<br><br>Fleetwood Motor Homes of California, Inc., and Workhorse Custom Chassis,<br><br>   Defendants. | No. 04-161-PHX-ROS<br><br>**OPINION AND ORDER** |

Defendant Fleetwood Motor Homes of California, Inc. ("Fleetwood") has moved for summary judgment. For the following reasons, the motion will be granted.[1]

## BACKGROUND

On March 27, 2003, Plaintiff Lane Sennett purchased a 2003 Fleetwood Pace Arrow 37A motor home from Michael Hohl RV Center in Carson City, Nevada. (Defendant's Statement of Facts "DSOF" ¶ 1) The total price of the motor home, including financing charges and interest, was $188,214.60. (DSOF 1) The motor home was covered by a "Limited One-Year/Three Year Warranty." (DSOF ex. 3) The warranty stated that the motor

---

[1] The Court did not set oral argument because the parties submitted memoranda thoroughly discussing the law and evidence in support of their positions, and oral argument would not have aided the Court's decision. See Mahon v. Credit Bur. of Placer County, Inc., 171 F.3d 1197, 1200 (9th Cir. 1999).

home "including the structure, plumbing, heating and electrical systems, all appliances and equipment installed by the manufacturer, is warranted under normal use to be free from manufacturing defects in material or workmanship." (Id.) The warranty was in effect "[for] all defects (other than structural) for a period of one year from [the date of original retail delivery] or until the unit has received 15,000 total miles of use as determined by the mileage shown on the odometer." (Id.) Structural defects, such as the "roof structure, sub-floor structure, exterior walls, interior walls and ceilings" were covered for three years. The warranty also stated that "[t]he owner is responsible for normal maintenance as described in the *Owner's Information Package*." (Id.)

The second page of the warranty was titled "**WHAT IS NOT COVERED BY THIS WARRANTY.**" That page listed various items not subject to the warranty, including:

> 1) "The automotive chassis system (including the chassis and drive train)";
> 
> 2) "Defects caused by or related to . . . [f]ailure to comply with instructions contained in the *Owner's Information Package*"; and
> 
> 3) "Transportation to and from dealer or Fleetwood Service Center location, loss of time, inconvenience, . . . loss of use . . . [and] other incidental or consequential damages."

Workhorse Custom Chassis ("Workhorse") provided and warranted the chassis portion of Plaintiff's motor home. As set forth in Workhorse's warranty, "the chassis generally consists of the frame, axle, engine, transmission, brakes, steering, suspension, and certain electrical components." (DSOF ex. 4)

Plaintiff alleges she began to experience problems immediately after purchasing the motor home. Plaintiff took her motor home to a number of different repair facilities to correct the deficiencies. Plaintiff alleges that the repair attempts were unsuccessful, leaving her motor home in a defective and unusable condition. In January 2004, Plaintiff filed this suit against Fleetwood and Workhorse. The suit contains claims for breach of written warranty, breach of the "common law" implied warranty of habitability and warranty of

1  merchantability, violations of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§
2  2301-2312, and violations of 16 C.F.R. §§ 700.4, 700.5, 701.3, 702.3.  (Doc. 72)
3  Specifically, Plaintiff alleges the following defects existed and were never sufficiently
4  repaired by Fleetwood or Workhorse:

   1. Defective interior trim
   2. Defective exterior trim
   3. Defective steering/suspension
   4. Defective electrical system
   5. Defective bathroom door
   6. Persistent water leak
   7. Defective cabinet door
   8. Persistent dying in flight condition
   9. Persistent stalling condition
   10. Defective shower stall
   11. Defective closet door
   12. Defective air conditioning compressor
   13. Defective fuel tank

12  Workhorse later moved to dismiss Plaintiff's claims based on the Arizona Motor Vehicles
13  Warranties Act and her claims for breaches of the implied warranties of merchantability and
14  habitability. The Court held that the Arizona Motor Vehicles Warranties Act claim and the
15  implied warranty of habitability claim should be dismissed but the implied warranty of
16  merchantability claim was allowed to proceed. Fleetwood filed a motion for summary
17  judgment after the close of discovery. In its motion, Fleetwood argues that Plaintiff does not
18  have sufficient evidence that Fleetwood failed to repair all alleged deficiencies. According
19  to Fleetwood, without evidence that the motor home is currently suffering from the alleged
20  defects, Plaintiff's claims for breach of warranty fail. Fleetwood also contends that it is not
21  responsible for any defects in the chassis, that Plaintiff has not proven that she suffered any
22  damage as the result of alleged defects, the implied warranty of merchantability claim fails
23  as a matter of law, and that Plaintiff has offered no evidence of any violation of applicable
24  regulations. Neither Workhorse nor Plaintiff filed a motion for summary judgment.

## ANALYSIS

**I. Jurisdiction**

"[T]he Magnuson-Moss Warranty Act creates a federal private cause of action for a warrantor's failure to comply with the terms of a written warranty...." Milicevic v. Fletcher Jones Imports, Ltd., 402 F.3d 912, 917 (9th Cir. 2005). The MMWA does, however, require that there be at least $50,000 in controversy. 15 U.S.C. § 2310(d)(3)(B). In her complaint, Plaintiff alleges that the amount in controversy exceeds $50,000 based on the "diminished value of the Motor Home and incidental and consequential damages." (Doc. 72) The parties do not dispute that over $50,000 is in controversy. The Court has jurisdiction.

## II. Applicable Law

The Court discussed the choice of law issue in its Order regarding Workhorse's Motion to Dismiss. (Doc. 133) In that Order the Court observed that "[t]he motor home was purchased and delivered in Nevada" and "Arizona has no significant relationship to the transaction." (Id.) The Court held that Nevada law applied and the parties do not dispute that holding now. Nevada law will be used in evaluating Plaintiff's state law claims.

## III. Summary Judgment Standard

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). When seeking summary judgment, a "moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1102 (9th Cir. 2000). Thus, a moving party can secure summary judgment by "pointing out . . . that there is an absence of evidence to support the nonmoving party's case." Id. at 1105 (quoting Celotex, 477 U.S. at 325).

## IV. Limited Warranty

To determine whether Fleetwood breached its obligations pursuant to the warranty, the Court must determine the scope of the warranty. Fleetwood believes that the warranty unambiguously disclaimed liability for the chassis, thereby precluding Fleetwood from any liability for chassis-related defects. Plaintiff believes that the scope of the warranty was ambiguous and the ambiguity should be resolved against Fleetwood. The Court agrees with Fleetwood that the terms of the warranty were clear.

The warranty in this case was prominently titled a "*Limited* One-Year/Three Year Warranty." (Emphasis added.) See 15 U.S.C. § 2303(a) (stating that a warranty may be "conspicuously designated a 'limited warranty'"). Also, the warranty at issue clearly disclaimed responsibility for certain portions of the motor home, such as the "chassis and drive train." The court in Plagens v. National RV Holdings, 328 F. Supp. 2d 1068, 1075 (D. Ariz. 2004), was confronted with an almost identical warranty. The Plagens court concluded that the plain language of the warranty precluded coverage for certain items and that the plain language should be given effect. Id. ("The Limited Warranty is clearly labeled as a "*Limited* One-Year/Three-Year Warranty" and it contains plainly-labeled provisions excluding certain components from coverage."). The court in Traynor v. Winnebago Industries, Inc., No. CV 03-2082 (D. Ariz. Aug. 3, 2005) reached the same conclusion that a warranty similar to the one in this case was sufficiently clear and should be given effect. The Court agrees with these other courts; the warranty in this case was clearly a "limited warranty." Under the terms of the limited warranty, Fleetwood was not responsible for any defects in the chassis portion of the motor home. Accordingly, the Court will limit its discussion to alleged defects covered by Fleetwood and disregard alleged defects in the chassis portion of the motor home.

**V. Remedies Pursuant to MMWA**

The MMWA contemplates two types of warranties: full and limited. 15 U.S.C. § 2303. The MMWA provides different remedies depending on whether a warranty is full or limited. For example, the MMWA provides a number of remedies such as a refund of the purchase price or replacement of the product without charge when a warrantor does not

comply with the terms of a full warranty. See Schimmer v. Jaguar Cars, Inc., 384 F.3d 402, 405 (7th Cir. 2004) (stating MMWA's substantive remedies only applicable to full warranties). When a limited warranty is at issue, the MMWA allows for a consumer to bring suit in federal court but does not provide any substantive remedies. Id. The requirement that a warrantor refund the purchase price if it fails to repair the product within a reasonable number of attempts does not apply to limited warranties. Id.; see also Traynor v. Winnebago Indus., Inc. et al., No. CV 03-2082, slip op. at 3 (D. Ariz. Aug. 3, 2005) (citing cases). Because the warranty at issue in this case was a limited warranty, the substantive remedies of the MMWA, including the requirement that repairs be completed within a reasonable number of attempts, do not apply. Id. Therefore, the Court need not address defects that have been adequately repaired, even if such repairs took multiple attempts.

### IV. Plaintiff's Evidence of Defects

In order to establish that Fleetwood breached its obligations pursuant to the warranty, and thereby violated the MMWA, Plaintiff "must demonstrate that (i) the [motor home] was subject to a warranty; (ii) the [motor home] did not conform to the warranty; (iii) [Fleetwood] was given reasonable opportunity to cure any defects; and (iv) [Fleetwood] failed to cure the defects." Temple v. Fleetwood Enterprises, Inc., No. 04-3238 (6th Cir. May 25, 2005) (unpublished).[2] If Plaintiff is able to establish these four elements, she must then demonstrate that Fleetwood's breach of warranty caused her economic loss. Id. However, if Plaintiff is unable to meet any of these requirements, her breach of warranty claims fail. Id. (holding that failure of one requirement, even assuming other requirements were met, was fatal to plaintiff's case).

Fleetwood's summary judgment motion focuses on the lack of evidence that any alleged defects are still present in the motor home. If Fleetwood adequately repaired the defects Plaintiff complained about, then Fleetwood has not "failed to cure the defects" and there was no breach of warranty. Id.; see also Hines v. Mercedes-Benz USA, LLC, 358 F.

---

[2] The Sixth Circuit allows citation to unpublished decisions. See 6th Cir. R. 28(g).

- 6 -

Supp. 2d 1222, 1228 (N.D. Ga. 2005) ("[I]t is the refusal to remedy within a reasonable time, or a lack of success in the attempts to remedy which would constitute a breach of warranty."). In support of its contention that Plaintiff has failed to create "a valid dispute as to whether there are any present defects in the motor home," (Doc. 134 p.9) Fleetwood cites to a variety of documents in the record, including: 1) a letter from Bryan Gaughan (Fleetwood's Dispute Resolution Administrator) to Plaintiff; 2) Plaintiff's Responses to Defendant Fleetwood's Interrogatories; 3) a report furnished by Bill Trimmell (Plaintiff's expert witness) and the deposition of Mr. Trimmell; 4) an evaluation of the motor home performed by Bryan Gaughan; and 5) Plaintiff's deposition. Fleetwood believes that these documents prove that Plaintiff does not have evidence of any continuing defects in the motor home. The Court examines each document below.

### A. Letter from Bryan Gaughan

On September 29, 2003, Bryan Gaughan, a Dispute Resolution Administrator for Fleetwood, sent a letter to Plaintiff regarding a telephone conversation. Apparently during the phone conversation Plaintiff had detailed the defects in her motor home. The letter states that "Fleetwood provided a one-year or 15,000 miles (whichever occurs first) warranty to correct defects in material or workmanship." At the time of the letter, the motor home had "over 21,000 miles" but Fleetwood was authorizing the repairs "for the outstanding items to resolve [Plaintiff's] concerns." The repairs were to be completed by "Dick Gore's RV World . . . at no charge to [Plaintiff], as a customer accommodation." The letter also referred Plaintiff to Workhorse Custom Chassis for any "outstanding chassis concerns." (DSOF ex. 9) As reflected by a time line of events created by Plaintiff, the motor home underwent repairs at Dick Gore's RV World and was ready to be picked up on October 17, 2003. (DSOF ex. 6) The time line does not contain any information regarding the state of the motor home after the repairs were completed.

### B. Response to Interrogatories

1    On April 27, 2004, Plaintiff supplied responses to Fleetwood's interrogatories. The first interrogatory stated: "Identify every item in the subject motor home that you allege *is currently defective*." (Emphasis added.) Plaintiff's response, in part, was: "Objection, as Plaintiff is not a mechanic, there is no foundation for her to answer this question. Furthermore, the RV has been parked in an unusable condition for approximately 270 days, from July 21st, 2003, until the present, *so the Plaintiff has no idea what remains defective today*." (DSOF ex. 10 p.2) (Emphasis added.) Thus, Plaintiff has admitted that she did not know what defects had been adequately repaired during the visit to Dick Gore's RV World in October 2003. Plaintiff's response goes on to state that certain defects "*appear* to remain unfixed," but does not state the basis for Plaintiff's belief. (Emphasis added.)

### C. Bill Trimmell's Report and Deposition

Plaintiff's disclosed expert witness, Bill Trimmell, provided a report setting forth his conclusions regarding the defects in the motor home and the current value of the motor home. In his report, Mr. Trimmell acknowledged that some of the defects Plaintiff alleged "may or may not have been resolved in one or more attempts" at repairing them. (DSOF ex. 15) Mr. Trimmell's report also states that Plaintiff's complaints regarding water leaks "may have been resolved on . . . [the] last trip in for warranty repairs" but it "remains to be seen" if the repairs were successful. Based on his "review of the coach's service history and an interview with the owner," Mr. Trimmell concluded the motor home was worth $56,475.00.

During his deposition, Mr. Trimmell was asked if he had conducted a physical inspection of the motor home; he stated he had not. Mr. Trimmell was then asked if he had ever seen any pictures of the motor home; he had not. Mr. Trimmell also stated that he had "no way of knowing" whether certain water leaks had been adequately repaired. (DSOF ex. 14 p.64) In fact, according to Mr. Trimmell "no one knows" whether the water leaks are still present. (Id. p. 63) Finally, Mr. Trimmell was asked regarding the current state of the motor home:

> Fleetwood:   As the motorhome . . . currently sits, what defects is it suffering from, if you know?

- 8 -

| | | |
|---|---|---|
| Trimmell: | You mean right now? | |
| Fleetwood: | Yep. | |
| Trimmell: | I haven't talked to anyone in this thing since probably a year ago, so I would have no way of being able to tell you that. | |

\* \* \*

| | |
|---|---|
| Fleetwood: | [I]n terms of the current state of the motorhome-- |
| Trimmell: | I have no knowledge. |

(Id. p. 75, 88) Mr. Trimmell's report was not amended any time after his deposition and before the close of discovery.

### D. Plaintiff's Deposition

Fleetwood deposed Plaintiff on September 14, 2004. During the deposition, Fleetwood went through a list of alleged defects and asked Plaintiff for more information on each defect. When asked about the alleged defect of one portion of the motor home rubbing on a light fixture, Plaintiff stated that she had not been using the vehicle lately so she did not know if this was still a problem. (DSOF ex. 2 p.55) Plaintiff's responses were similar regarding a wide variety of other alleged defects; she did not know if the defects had been adequately repaired or if they were still present.[3] Plaintiff did have knowledge that some

---

[3] The following are Plaintiff's responses to questions regarding specific alleged defects after Fleetwood had attempted to repair them.
- When asked about a bathroom door that would not stay shut, Plaintiff responded that "it could" still be a problem but she did not know. (Id. p. 57)
- When asked about the mudflaps hanging improperly Plaintiff again responded that "it could" still be a problem but she didn't know. (Id. p. 58)
- When asked about the exterior light systems, Plaintiff stated "I think the exterior light system works." Plaintiff could not recall any problems since repairs on the system were completed. (Id. p. 63-64)
- When asked if the motor home still had a water leak in the sink, Plaintiff responded "I don't know. I haven't used the sink." (Id. p. 71)
- When asked if the toilet still had a water leak, Plaintiff responded "I don't know. I haven't used it." (Id. p. 72)
- When asked about problems with the shower stall, Plaintiff could not recall if there were currently any problems. (Id. p. 75)

The affidavit submitted by Plaintiff in connection with the summary judgment motion reflects a similar lack of knowledge regarding *current* defects. In that affidavit Plaintiff claims that the motor home still suffers from certain defects but then references a specific

door catches needed to be adjusted (Id. p. 56), the generator was not working perfectly (Id. p. 61), a screw in a door handle was rusting (Id. p. 59), and there was a leak over the driver's seat. (Id. p. 70)

### E. Bryan Gaughan's Report

On November 4, 2004, Mr. Gaughan sent Plaintiff's counsel a report regarding his inspection of the motor home. That report went through each of the non-chassis alleged defects. Mr. Gaughan found that "[o]verall, the motor home is in good condition. All items in [Plaintiff's] alleged defects list were not defective and operated properly with the exception of" four items:

- A couple drawers and one door that popped open during travel, which would require an adjustment or a catch replacement.
- Replace the rusted screw in the entry door handle and install a screw in the rear monitor.
- Leak in roof over driver's seat through light fixture. This requires sealant maintenance around the satellite dish and there are other areas that need maintenance. (Mr. Gaughan referenced the section of the owner's manual regarding sealant maintenance.)
- The generator did start and function but would not turn off immediately. The generator may require a tune up.

In light of these issues, the motor home had a "used retail" value of $96,010.00. Mr. Gaughan believed "there is no defect that substantially impairs the value of this motor home now . . . [and] [t]here is no impairment to the use, value or safety of this motor home." (DSOF ex. 12)

These documents as well as Plaintiff's failure to indicate portions of the record contradicting these documents, demonstrate that Plaintiff does not have evidence that the vast majority of alleged defects still exist. Evidence that the defects still exist (after Fleetwood's attempted repairs) is an essential element of Plaintiff's case and the lack of such evidence

---

listing of the alleged defects. That list contains statements such as:
- the mudflap "was repaired recently, but [the problem] will reoccur due to bad design."
- the camera "may fail again."
- it is "unknown whether [the windshield wipers are] fixed or not.
- the generator "may or may not be fixed." (PSOF ex. A-4)

- 10 -

requires the Court to award summary judgment.[4] Nissan Fire & Marine Ins. Co, Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1102 (9th Cir. 2000) (pointing out the lack of evidence regarding an essential element entitles a party to summary judgment). The only alleged defects that find support in the record are those Plaintiff described in her deposition as still existing and those found by Mr. Gaughan. The alleged defects are 1) door and drawer catch issues; 2) one missing and one rusting screw; 3) a leak in a light fixture; and 4) generator issues. These alleged defects may be enough to defeat summary judgment if Plaintiff has established that they are, in fact, defects.

Federal Rule of Evidence 701 "permits a lay witness to give opinion testimony as long as the opinion is '(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.'" United States v. Yazzie, 976 F.2d 1252, 1255 (9th Cir. 1992) (quoting Fed. R. Evid. 701). A lay witness' testimony regarding a defect will often be enough "if that defect is one that can be understood by the reasonable juror." Bailey v. Monaco Coach Corp., 350 F. Supp. 2d 1036, 1045 (N.D. Ga. 2004). But where an alleged defect is "not within the reasonable purview of the average layperson," expert testimony is required. Id. In addition, the "mere existence" of a certain problem, however, does "not support the inference" that the problem is caused by a defect. Teerling v. Fleetwood Motor Homes of Indiana, Inc., No. 99-C5926, 2001 WL 641337, at * 5 (N.D. Ill June 4, 2001). The problem must be present and there must be some evidence that the problem is caused by a "manufacturing defect[] in material or workmanship." See id. (awarding summary judgment in favor of warrantor because Plaintiff failed to provide evidence precluding other possible causes of problems). Plaintiff has not presented sufficient evidence that all of the problems constitute defects.

---

[4] It is possible that the record contains evidence that the alleged defects still exist. Plaintiff, however, did not appropriately cite to such evidence in her summary judgment filings. The Court is not required "to scour the record in search of a genuine issue of triable fact." Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996). The burden was on Plaintiff "to identify with reasonable particularity the evidence that precludes summary judgment." Id.

As pointed out by Fleetwood, Plaintiff may be able to testify that certain problems are still present in the motor home but she "has offered absolutely no evidence as to why she is qualified to opine regarding whether a motor home . . . contains a defective component." (Doc. 134 p.9) The Court agrees that Plaintiff is not qualified to address certain alleged defects but other alleged defects do not require more than Plaintiff's testimony. Each alleged defect is addressed separately.

### A. Door and Drawer Catches

According to Mr. Gaughan, a couple drawers and one door popped open during his test drive. These problems may require an adjustment or a catch replacement. Plaintiff stated in her deposition that these problems appeared on the first trip in the motor home. (DSOF ex 2 p.56) Plaintiff believes these problems constitute defects subject to the Fleetwood warranty. Drawers and doors opening during travel could be "understood by the reasonable juror" to qualify as defects. Bailey, 350 F. Supp. 2d at 1045. Therefore, Fleetwood is not entitled to summary judgment based on a lack of evidence.

### B. Missing and Rusting Screw

Mr. Gaughan and Plaintiff both state that one screw is rusted in the handle next to the door. (DSOF ex. 2 p.59) Mr. Gaughan also states that a screw is missing from the camera. A reasonable juror could understand these problems to constitute defects. Thus, Fleetwood is not entitled to summary judgment based on a lack of evidence that these defects still exist.

### C. Leak Above Driver's Seat

Plaintiff and Mr. Gaughan agree that there is a water leak above the driver's seat. Fleetwood's warranty states that Plaintiff was "responsible for normal maintenance as described in the *Owner's Information Package*." The Owner's Manual states that Plaintiff was responsible for certain sealant maintenance. (DSOF ex. 13) After his inspection of the motor home, Mr. Gaughan concluded that the seal around the satellite dish was inadequate and was causing the leak above the driver's seat. But Mr. Gaughan also believed that the leak may be the result of Plaintiff's failure to inspect and maintain sealants as required by the

owner's manual. An expert witness would have to explain whether the leak around the satellite dish was the result of a defect attributable to Fleetwood, or the result of Plaintiff's failure to comply with the Owner's Manual by performing required maintenance. See Teerling, 2001 WL 641337 at *7 (holding drain valves not defective because they may have "limited life span" or need to "be replaced periodically"). This is Plaintiff's burden and she has not produced sufficient evidence that the leak should be considered a defect. Fleetwood is entitled to summary judgment regarding this problem.

### D. Generator Issues

According to Mr. Gaughan, the generator works properly except it does not turn off immediately when the motor home is turned off. Plaintiff's deposition supports the need for an expert witness regarding the generator problems. When asked a question regarding the electrical system, Plaintiff stated that "the electrical system is not working due to the gen–it doesn't work well due to the problem with the generator. But I'm–you know, I'm not an electrician and I'm not an auto mechanic. I just know that there are continuing issues." (DSOC ex. 2 p. 61) Also, in her response to Fleetwood's interrogatories, Plaintiff stated that she was not a mechanic so she could not provide information regarding problems still present in the motor home. Whether the generator's failure to turn off immediately qualifies as a defect is "not within the reasonable purview of the average layperson." Bailey, 350 F. Supp. 2d at 1045. Expert testimony would be required to explain if the generator was defective and subject to the warranty, or if it simply needed a "tune up." (DSOF ex 12) Fleetwood is entitled to summary judgment regarding this problem.

Fleetwood possibly breached its warranty obligations when it failed to repair the problems with the door and drawer catches, and the missing and rusting screws. There is some question whether Plaintiff has provided adequate evidence of damage suffered as a result of these alleged defects. Plaintiff's expert's report does not provide a detailed analysis of the impact each alleged defect has on the value of the motor home; and the expert's report only reflects that Plaintiff has suffered *some* damage as a result of the allegedly defective

state of her motor home. Thus, Fleetwood is entitled to summary judgment regarding the door and drawer catches and screws.

## V. Incidental or Consequential Damages

Fleetwood seeks a determination that Plaintiff may not recover incidental or consequential damages. The limited warranty specifically provides that Fleetwood will not be liable for such damages. (DSOF ¶ 11) Plaintiff believes that the warranty has failed of its essential purpose, thereby invalidating the coverage disclaimer. But the only problems that find support in the record involve door and drawer catches and two screws. Thus, "[t]here is simply no evidence that the repair . . . provision[] in the warrant[y] . . . failed of [its] essential purpose and thus no reason to invalidate the accompanying limitations on consequential damages." Anderson v. Newmar Corp., 319 F. Supp. 2d 943, 948-49 (D. Minn. 2004). The warranty in this case did not fail of its essential purpose and Plaintiff is not entitled to seek consequential or incidental damages.

## VI. Common Law Claims

The Court previously ruled that pursuant to Nevada law, Plaintiff has failed to state a claim for breach of the implied warranty of habitability. (Doc. 133) Fleetwood is entitled to summary judgment on that issue. There are two other implied warranties that Plaintiff believes apply: the implied warranty of merchantability and the implied warranty of fitness for a particular purpose. These claims must be addressed by reference to Nevada law.

To establish a claim for breach of the implied warranty of merchantability "a plaintiff must prove that a warranty existed, the defendant breached the warranty, and the defendant's breach was the proximate cause of the loss sustained." Nevada Contract Services, Inc. v. Squirrel Cos., Inc., 68 P.3d 896, 899 (Nev. 2003). As previously set forth, Plaintiff has not set forth sufficient evidence that Fleetwood breached its warranty obligations and that she suffered economic loss as a result. For these reasons, Plaintiff's implied warranty of merchantability claim fails.

Pursuant to Nevada law, the implied warranty of fitness for a particular purpose is defined as:

> When the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.

Nev. Rev. Stat. 104.2315. As set forth in the comments to that section,

> A "particular purpose" differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question.

Plaintiff has not provided any evidence that she planned to use the motor home for anything other than "the ordinary purposes" for which a motor home is normally used. In fact, Plaintiff had admitted that she planned to use the motor home for "mobile housing, lodging, cooking and entertainment," the ordinary purposes for which a motor home is used. (Doc. 144 p. 10) Fleetwood is entitled to summary judgment regarding the implied warranty of fitness for a particular purpose claim.

**VII. Regulatory Violations**

In addition to her common law and MMWA claims, Plaintiff has alleged claims based on four federal regulations: 16 C.F.R. §§ 700.4, 700.5, 701.3, 702.3. Plaintiff only provides argument regarding the viability of her claim pursuant to 16 C.F.R. § 700.5. Thus, the Court is left with only Fleetwood's argument that the other regulations either do not apply or Plaintiff has not presented sufficient evidence.[5]

---

[5] In her Response to the Motion for Summary Judgment, Plaintiff states that the Court may consider her claim pursuant to 16 C.F.R. § 703.2 "voluntarily dismissed." (Doc. 144 p.17 n.23) It appears that Plaintiff meant § 702.3, not 703.2, and that is how the Court construes Plaintiff's statement.

- 15 -

Plaintiff claims that 16 C.F.R. § 700.5 "provides a cause of action for those damaged by a supplier's failure to meet statements and representations of general policy concerning customer satisfaction." (Doc. 144 p.17)  But the language of the regulation reflects that "statements and representations of general policy concerning customer satisfaction" are to "remain subject to the enforcement provisions of [the MMWA]."  16 C.F.R. § 700.5(a). Plaintiff has cited no authority that this regulation provides a cause of action separate from her MMWA claims.  Thus, Fleetwood is entitled to summary judgment regarding § 700.5.

Fleetwood is also entitled to summary judgment regarding Plaintiff's claims pursuant to 16 C.F.R. §§ 701.3 and 700.4.  Section 701.3 requires a warrantor to disclose certain information and the warranty at issue disclosed such information.  Section 700.4 provides that a party "'actually making' a written warranty" is the party responsible under the MMWA. 16 C.F.R. § 700.4.  Fleetwood does not dispute that it was the party making the warranty and the party ultimately responsible to fulfill the terms of that warranty.  In the absence of argument by Plaintiff, the Court is unable to divine how Fleetwood could have violated this regulation.  Summary judgment is appropriate.

Accordingly,

**IT IS ORDERED** Fleetwood's Motion for Summary Judgment (Doc. 134) is **GRANTED**.

**IT IS FURTHER ORDERED** Plaintiff's Motion to Stay Motion for Summary Judgment (Doc. 137) is **DENIED** as Plaintiff voluntarily withdrew the motion. (Doc. 141)

**IT IS FURTHER ORDERED** Fleetwood's Motion to Supplement (Doc. 162) is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Plaintiff and Workhorse Custom Chassis file a Joint Proposed Pretrial Order by June 30, 2006.

**IT IS FURTHER ORDERED** the Final Pretrial Conference is set for August 24, 2006 at 1:30 p.m.

**IT IS FURTHER ORDERED** trial is set for September 12, 2006 at 9:00 a.m.

DATED June 2, 2006.

_____
Roslyn O. Silver
United States District Judge